UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 08-cv-02289-WYD

GLORIA NARANJO, on behalf of Eugenio D. Naranjo (deceased),

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

---

**ORDER**

---

I.    <u>INTRODUCTION</u>

THIS MATTER is before the Court on review of the Commissioner's decision that

denied claimant Eugenio Naranjo's application for disability insurance benefits and

supplemental security income payments under the Social Security Act ["the Act"].  For

the reasons stated below, this case is reversed and remanded for further factfinding.

II.    <u>FACTUAL BACKGROUND</u>

On July 12, 2004, Eujenio D. Naranjo ("Mr. Naranjo") filed applications for

benefits claiming that he became unable to work as of June 4, 2003, due to diabetes,

poor vision, pain in the hips, legs, feet, and back, high cholesterol, and high blood

pressure.  (Administrative Record ["R."] 17, 74-76, 90, 420-23.)  Born in March 1946,

Mr. Naranjo was 57 years old on the date he alleged he became disabled.  (*Id.* 74,

444).  He had an eleventh grade education, and past relevant work experience as a

security guard, maintenance worker, and loader operator.  (*Id.* 91, 451.)

Mr. Naranjo's claim was denied at the initial determination stage. (R. 29-34, 424-28.) A hearing was then held before an Administrative Law Judge ["ALJ"] on January 5, 2007. (*Id.* 17, 437-62.) In a decision dated March 16, 2007, the ALJ issued a decision that Mr. Naranjo was not disabled. (*Id.* 14-28.)

Specifically, the ALJ found that Mr. Naranjo was insured for Title II benefits through December 31, 2008, and that he had not engaged in substantial gainful activity since June 4, 2003. (R. 19, Findings 1 and 2.) The ALJ determined at step two that Mr. Naranjo had the following "severe" impairments: diabetes, hypertension, obesity, tobacco abuse, polyarthralgias, myalgias, osteoarthritis, and degenerative joint disease of the hips and spine. (*Id.*, 19, Finding 3.) At step three, he found that Mr. Naranjo's medically determinable severe impairments did not meet or equal one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (*Id.* 20, Finding 4).

The ALJ then determined that Mr. Naranjo retained the residual functional capacity ["RFC"] to lift and carry 50 pounds occasionally and 25 pounds frequently; stand, walk, and sit for six hours in an eight-hour day; frequently balance, and climb ramps and stairs; occasionally climb scaffolds and ladders, stoop, crouch, kneel, and crawl; and occasionally reach overhead bilaterally. (R. 20, Finding 5). He also determined that Mr. Naranjo's "medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (*Id.* 20.) Thus, the ALJ appeared to discount Mr. Naranjo's complaints of pain in formulating the RFC.

At step four the ALJ found, based on the testimony of a vocational expert, that Mr. Naranjo was able to perform the work-related activities required by his past relevant work as a security guard. (R. 26.) In the alternative, the ALJ found that other work exists in significant numbers in the national economy that Mr. Naranjo could perform. (*Id.* 27). The ALJ found, therefore, that Mr. Naranjo was not disabled. (*Id.*, 27-28.) Mr. Naranjo then requested review of the decision. (*Id.* 12.)

Mr. Naranjo died on July 20, 2007. Mr. Naranjo's widow Gloria Naranjo has been designated by the Commissioner as a substitute party for the deceased. Gloria Naranjo will hereinafter be referred to as the Plaintiff.

The Appeals Council declined review of the ALJ's decision. (R. 6-8). Plaintiff then requested judicial review. The ALJ's decision became the final administrative decision, and this case is ripe for judicial review pursuant to 42 U.S.C. § 405(g).

III.   ANALYSIS

A.   Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). I find for the reasons discussed below that this case must be remanded to the Commissioner for further factfinding.

B.     Whether the ALJ Properly Weighed the Medical Evidence

Plaintiff argues that the ALJ did not properly weigh the medical evidence in this case, including the opinions of treating physician Dr. Lopez, consultative examiner Dr. Campbell, and nonexamining state agency physician Dr. Weaver. Accordingly, Plaintiff argues that the ALJ's findings are not supported by substantial evidence and/or that the ALJ failed to apply correct legal standards.

1.     Whether Treating Physician Dr. Lopez's Opinions were Properly Weighed

I first address the treating physician's opinions. An ALJ is "required to give controlling weight to a treating physician's opinion about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and any physical or mental restrictions, if 'it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.'" *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (quotation omitted). "A treating physician's opinion must be given substantial weight unless good cause is shown to disregard it." *Goatcher v. United States Dep't of Health and Human Servs.*, 52 F.3d

-4-

288, 289-90 (10th Cir. 1994). The treating physician's opinion is given particular weight

because of his unique perspective to the medical evidence that cannot be obtained from

the objective medical findings alone or from reports of individual examinations.

*Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). The ALJ must give

specific, legitimate reasons for disregarding a treating physician's opinion that a

claimant is disabled." *Goatcher*, 52 F.3d at 290.

I first find that the ALJ erred in not clearly stating what weight he gave

Dr. Lopez's opinions. Where an ALJ fails to articulate the weight given to an opinion,

the court cannot meaningfully review the ALJ's determination. *Robinson*, 366 F.3d at

1083. In *Robinson*, the court found error where "it [wa]s obvious from the ALJ's

decision that he did not give [a doctor's] opinion controlling weight" but "the ALJ never

expressly stated that he was not affording it controlling weight." *Id.* at 1083.

In this case, the ALJ stated that he gave Dr. Lopez's opinions regarding

Mr. Naranjo's ability to work and functional limitations "little weight" (R. 22-23), but it

appears that he gave these opinions no weight. However, he did not make this clear in

the record. Further, the ALJ failed to state what weight he was giving to Dr. Lopez's

medical findings in the treatment records. This is error under the above authority.

Second, I agree with Plaintiff that the ALJ's decision to give "little weight" to the

Medical Assessment of Ability to Do Work-Related Activities prepared by Dr. Lopez as

well as his opinions and findings is not supported by substantial evidence. That is

because he did not properly weigh Dr. Lopez's opinions and the reasons that he gave to

reject these opinions are not valid.

-5-

Dr. Lopez provided treatment to Mr. Naranjo between mid-2004 and the date of the hearing. (*See* R. 210-216, 320-334, 357-366, and 389-402). On several occasions, Dr. Lopez stated that Mr. Naranjo was disabled or unable to work because of his diabetes, chronic arthritis, obesity and other ailments. (*Id.* 254—March 4, 2005; 322—April 6, 2005; 368—February 13, 2006). On December 23, 2004, Dr. Lopez completed a functional capacity evaluation noting the following restrictions due to diabetes and "marked arthritis in multiple joints": lifting of 10-20 pounds, no grasping or fine manipulation, and an inability to work an 8 hour day. (*Id.* 253.) On December 19, 2006, Dr. Lopez issued the following restrictions due to arthritis, obesity and diabetes: lifting 10 pounds, sitting for 2 hours, standing for one hour, walking for 20 minutes, occasional reaching, handling and fingering, and no bending, stooping or other postures. (*Id.* 415-417.) If Dr. Lopez's restrictions are accepted, the vocational expert opined that Mr. Naranjo would be disabled. (*Id.* 459-60.)

The ALJ first chose to give "little weight" to Dr. Lopez's functional assessments and opinions regarding Mr. Naranjo's ability to work because they were not supported by the objective medical evidence. It is true that an ALJ must first consider whether the opinion is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" *Robinson*, 366 F.3d at 1082 (quotations omitted)). If it is not, the opinion is not entitled to controlling weight.

However, the decision by an ALJ that a treating physician's opinions are not entitled to controlling weight does not allow him to reject their opinions outright. *Langley v. Barnhart*, 373 F.3d 1116, 1120 (10th Cir. 2004); SSR 96-2p, 1996 WL 374188, at *4

(1996). Instead, the physician's opinions are "'still entitled to deference and must be weighed using all of the [relevant] factors.'" *Id.* (quotation omitted). These factors are set out in 20 C.F.R. § 404.1527(d). The ALJ erred in that he did not engage in this weighing process regarding Dr. Lopez's opinions.

Moreover, contrary to the ALJ's findings, Dr. Lopez's medical records make findings regarding medically determinable impairments that could reasonably cause the functional limitations he assessed and the ALJ did not weigh or give deference to those findings. For example, Dr. Lopez stated in January 2006 as to Mr. Naranjo's obesity that he continued to gain weight because of "his arthritis and all that pain." (R. 357.) After complaining of "multiple falling episodes" (*id.* 212), Dr. Lopez found that Mr. Naranjo's "main problem is that he is having trouble keeping his balance, because of loss of sensation in his feet and legs", "has chronic low back pain, which together cause him to fall down at times" and "[h]is proprioception is not adequate to keep him on his feet at all times". (*Id.* 210.) He also stated that low back pain and loss of feeling in feet prevents Mr. Naranjo from being able to walk very much without falling down, possibly causing injury. (*Id.* 211.)

Further, the record contains findings of diabetic neuropathy in Mr. Naranjo's hands, feet and ankles and other doctors have also diagnosed pain in these areas as well as Mr. Naranjo's back. (*See, e.g.*, R. 148, 333, 341, 345.) Finally, an x-ray showed "[m]oderately severe osteoarthritic changes in the hips bilaterally" as well as "[m]ild changes of spondylosis in the lumbar spine at L-4-5 and L5-S1 with associated arthritic change in the lower lumbar apophyseal joints." (*Id.* 240.)

A medical doctors's statements about a patient's condition or impairments "are specific medical findings". *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The ALJ errs in rejecting those opinions in the absence of conflicting evidence. *Id.* (ALJ erred in rejecting opinions of treating physicians because of the lack of "results or diagnostic tests of medical findings which led them to their conclusion" since the finding that the plaintiff's condition deteriorates under stress is a specific medical finding).

Further, the degree to which a doctor's opinions is supported by other relevant evidence is one of the factors to be considered in weighing the opinions. According to § 404.1527(d)(3), "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that opinion." Here, there was support for Dr. Lopez's opinions in his records as detailed above and the ALJ was not entitled to simply reject that evidence.

I also find that the ALJ erred in making improper lay judgments about Dr. Lopez's opinions regarding Mr. Naranjo's ability to work. An ALJ "may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*" *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (emphasis in original).

In this case, the ALJ made numerous speculative inferences from the medical evidence. For example, he rejected Dr. Lopez's assessments of Mr. Naranjo's ability to work based on his interpretation of an x-ray. (R. 22.) This was improper as the ALJ does not have the expertise to interpret how an X-ray impacts functional limitations in

the ability to work, *e.g.,* whether an x-ray supports a lifting restriction of 10, 20, 50

pounds or some other weight.[1]  Further, the ALJ improperly misread the x-ray as being

less severe than was stated.  The x-ray showed "moderately severe osteoarthritic

changes in the hips", not "mild to moderate" changes as stated by the ALJ.  (R. 24.)

This raises the question of whether the ALJ would have found Dr. Lopez's restrictions to

be consistent with the objective evidence had he properly read the x-ray results.

The ALJ also rejected Dr. Lopez's opinions regarding Mr. Naranjo's problems

with his hands and joints because no x-rays or other imaging studies showed problems.

(R. 22.)  Similarly, he rejected the findings that Mr. Naranjo had disabling limitations in

the use of his hands and feet due to diabetic neuropathy because no nerve conduction

studies were conducted.  (*Id.* 23.)  These findings were improper lay judgments by the

AIJ, and he had no evidence to support these conclusions.  *Winfrey v. Chater*, 92 F.3d

1017, 1022 (10th Cir. 1996) (the ALJ improperly substituted his medical judgment for

that of the physician when he determined that the test results were not adequate to

support a diagnosis).

The ALJ also improperly speculated that Dr. Lopez's reference to Mr. Naranjo's

ability to change positions somehow was inconsistent with the stated limitations on

sitting, standing and walking.  (R. 23.)  Further, he speculated that Dr. Lopez's finding

on one date that Mr. Naranjo's spine was "straight and non-tender" must be inconsistent

with his later finding that Mr. Naranjo had severe arthritis in his back and/or his

---

[1]  While the Commissioner argues that the ALJ relied on the findings of nonexamining physician Dr. Weaver for his assessment of the x-ray findings, the record does not appear to support this.  The decision must be based on the reasons given by the ALJ or the Appeals Council, and must stand or fall on this basis.  *See Knipe v. Heckler*, 755 F.2d 141, 149 n. 16 (10th Cir. 1985).

limitations on standing and walking. (*Id.*) Again, these are improper interpretations of the medical evidence that the ALJ was not qualified to undertake.

Moreover, if the ALJ had questions about Dr. Lopez's opinions or whether the medical evidence was adequate to determine whether a disability exists, the ALJ should have contacted Dr. Lopez. *McGoffin*, 288 F.3d at 1252 (citing 20 C.F.R. § 404.1512(e)(1) (2001)). Alternatively, he could have and actually did order a consultative examination. However, the ALJ then rejected even the findings of the consultative examiner. I find error with that for the reasons discussed below.

The ALJ also stated that "the other substantial evidence (discussed in this decision) does not fully support the conclusions" of Dr. Lopez, but he improperly does not specify what other evidence he is referring to. Further, the ALJ rejected Dr. Lopez's opinions about disability on the basis that this is an issue reserved to the Commissioner. (R. 23.) However, "opinions from any medical source on issues reserved to the Commissioner must never be ignored." *Miller v. Barnhart*, No. 01-2231, 2002 WL 1608452, at *3 (10th Cir. July 22, 2002). "The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner." *Id.*

Finally, two other bases stated by the ALJ for rejecting Dr. Lopez's opinions merit discussion. First, the ALJ rejected Dr. Lopez's opinions regarding Mr. Naranjo's functional limitations and ability to work because they were prepared on "a fill-in-the-blanks, check-blocks form along with several prescription pad forms." (R. 23.) He

stated that "these documents lack the bases for the conclusions regarding limitations such as signs, test results, and whether the limitations were based on claimant's subjective complaints or objective findings or observations." (*Id.*)  Further, he rejected Dr. Lopez's opinions because he failed to respond to the ALJ's request for clarification, other than providing another "check-blocks form".  (*Id.*)  I find error with these findings.

The fact that Dr. Lopez's functional assessment was prepared on a standard form is not a sufficient basis to simply reject it.  *See Anderson v. Astrue*, No. 05-4305, 2009 WL 886237, at *6 (10th Cir. April 3, 2009) (rejecting argument that such forms which were completed by a treating physician without examination findings or treatment notes cannot be substantial evidence).  The functional assessment was prepared based on knowledge obtained by Dr. Lopez as a treating physician, which must properly be taken into account.  Further, the ALJ gave weight to the state agency physician's assessment which was also on such a form even though that physician had no history with Mr. Naranjo.  It is difficult to understand how the ALJ could accept the nonexamining physician's unsupported restrictions on a checked blocks form when he was not willing to accept the same from Dr. Lopez who had a long history of treatment of Mr. Naranjo.  *See Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008).

Finally, the fact that Dr. Lopez did not provide further clarification as requested by the ALJ, while a factor that may be weighed, also does not provide a basis to simply reject Dr. Lopez's assessment of Mr. Naranjo's ability to work.  As noted earlier, an ALJ may reject a treating physician's opinion only on the basis of contradictory medical evidence and not due to his own credibility judgments.  *McGoffin*, 288 F.3d at 1252.

-11-

## 2. Consultative Examination By Dr. Campbell

I now turn to the opinions of consultative examiner Dr. Campbell, who the Commissioner required Mr. Naranjo to see. She saw Mr. Naranjo on October 19, 2004. (R. 235). Dr. Campbell opined that Mr. Naranjo could lift 10 pounds frequently, 20 pounds occasionally, and 40 pounds infrequently, could stand/walk for 4 hours per day, could occasionally assume postures such as stooping and squatting, and that he needed to rest once or twice per day. (*Id.* 238.) Dr. Campbell based her opinion in part on an X-ray she took as part of the exam. As discussed earlier, that x-ray showed moderately severe osteoarthritis in the hips and [m]ild changes of spondylosis in the lumbar spine at L-4-5 and L5-S1 with associated arthritic change in the lower lumbar apophyseal joints." (*Id.* 240.)

As with Dr. Lopez, the ALJ stated that he gave Dr. Campbell's opinion "little weight." (R. 24.) He also stated that he found her opinion "was not well grounded in objective evidence and not entitled to significant weight." Again, this does allow me to identify what weight, if any, was given to her opinion. It appears, however, that he gave no weight to the opinion and erred in not clearly stating this in his decision.

I also find errors in connection with the ALJ's stated reasons for rejecting the opinion of Dr. Campbell. I agree with Plaintiff that none of those reasons have any tendency to discredit her opinions. First, the ALJ improperly rejected Dr. Campbell's opinion because he believed that it was based on Mr. Naranjo's subjective complaints. (R. 24.) However, the Tenth Circuit has made clear that an ALJ may not reject the opinions of a treating physician "based merely on his own speculative conclusion that

-12-

the[ir] report was based only on claimant's subjective complaints." *Langley*, 373 F.3d at

1121. "The ALJ [must have] a legal or evidentiary basis for his finding that [a treating

physician's] opinions were based merely on Plaintiff's subjective complaints. . . ." *Id.*;

*see also Garcia v. Barnhart*, No. 05-2322, 2006 WL 1923984, at *3 (10th Cir. July 13,

2006) ("when an ALJ rejects a medical opinion . . . based on his speculation that the

doctor was unduly swayed by a patient's subjective complaints, the ALJ deviates from

correct legal standards and his decision is not supported by substantial evidence").

In this case, the ALJ had no legal or evidentiary basis for his finding that

Dr. Campbell's decision was based on Mr. Naranjo's subjective complaints. Instead,

the opinion of Dr. Campbell appears to be based on medical findings from her

examination of Mr. Naranjo and the results of the x-ray. Indeed, she found that

Mr. Naranjo's complaints "are consistent in location and activity with degenerative joint

disease of the hips and referred pain from the hips to the knees." (R. 238.) She also

stated that there is "lumbar degenerative change which could account for some of the

back pain." (*Id.*) She then concluded that the restrictions she imposed were based on

the degenerative changes in the hips and Mr. Naranjo's back condition. (*Id.*)[2]

Second, the ALJ again misconstrued the facts and interposed his own lay

opinions regarding Dr. Campbell's medical findings. For example, he rejected her

finding that Mr. Naranjo's gait was awkward because he "was able to raise on his heels

and toes, and able to heel-toe walk." (R. 24.) He rejected her findings of knee pain

---

[2]  Further, Mr. Naranjo's complaint to Dr. Campbell of falling down which is referenced by the ALJ
as a subjective complaint which is less than credible (*id.* 24) is actually supported in the medical records of
Dr. Lopez, as discussed previously.

-13-

because x-rays of the knee were normal, and noted that Mr. Naranjo had no localized tender points of fibromyalgia. (*Id.*) However, Mr. Naranjo did not claim fibromyalgia as an impairment, and it is error to discount pain based on results of x-rays since pain is not diagnosed in that manner. *Simmonds v. Massanari*, 160 F. Supp. 2d 1235, 1243 (D. Kan. 2001).

The ALJ also again improperly interpreted the results of the x-ray to determine that it did not support the functional limitations imposed by Dr. Campbell and in so doing, again misread the results of the x-ray to be only "mild to moderate" osteoarthritic changes in the hips as compared to the "moderately severe" changes noted in the x-ray. (R. 240.) Again, the ALJ is not qualified to read the results of an x-ray to determine that it does not support opinions of a medical doctor. That is a medical opinion that must be made by a medical provider.

Finally, the fact that Dr. Campbell stated that Mr. Naranjo's complaints of pain "were typical of a psychological condition" does not allow him to reject her medical diagnoses or to discount pain as a limitation on the ability to work. *See Teter v. Heckler*, 775 F.2d 1104 (10th Cir. 1985) (complaints of pain cannot be dismissed as incredible merely because they stem in part from a psychological abnormality, so long as the abnormality is shown by "medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques. . . .'" (quotation omitted).

For all of these reasons, I find that the ALJ did not properly weigh the opinions of Dr. Campbell. I also find that his conclusion that her opinions "were not well grounded in objective evidence" is not supported by substantial evidence.

-14-

3.      The NonExamining State Agency Physician Dr. Weaver

Dr. Weaver completed the Commissioner's standard RFC form on November 24, 2004. (R. 242-49.) He restricted Mr. Naranjo to lifting 50 pounds occasionally (*id.* 243), sitting and standing to six hours each (*id.*), occasional postural activity (*id.* 244), and occasional overhead reaching (*id.* 245). Dr. Weaver did not believe that Dr. Campbell's restrictions were fully supported by the objective evidence. (*Id.* 248).

It appears that the ALJ gave controlling weight to Dr. Weaver's opinion, but this is not clear in the record. Indeed, the ALJ never expressly states what medical evidence he is relying on in support of his RFC. Nevertheless, the ALJ did state that he gave "substantial weight" to the opinion of Dr. Weaver "because it is most consistent with the objective medical evidence." (R. 24.) Further, the RFC assessment generally tracks Dr. Weaver's findings, so I presume that Dr. Weaver opinion was given controlling weight. I find error, however, with the weighing of that opinion.

"The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is generally entitled to the least weight of all." *Robinson*, 366 F.3d at 1084. Indeed, "findings of a nontreating physician based upon limited contact and examination are of suspect reliability." *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987). An ALJ errs in rejecting the opinions of a treating physician's opinions over those of a nonexamining physician "absent a legally sufficient explanation for doing so." *Robinson*, 366 F.3d at 1084.

-15-

I first note that the Tenth Circuit has indicated that the type of evaluation forms prepared by Dr. Weaver as a nonexamining physician, standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence." *Id.* The form prepared by Dr. Weaver was not accompanied by a thorough written report and he did not testify. Thus, reliance on this form was questionable.

Further, if the ALJ relies heavily on opinions of an agency medical consultant that did not examine the claimant, those "opinions must themselves find adequate support in the medical evidence". *Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at * 3 (10th Cir. Dec. 8, 2004). The opinions of the treating sources and Dr. Campbell do not support the findings of Dr. Weaver. Further, the ALJ did not cite opinions of any other medical provider which supported Dr. Weaver's opinion.

Instead, the ALJ stated that he gave substantial weight to Dr Weaver's opinion "because it is most consistent with the objective medical evidence. The claimant's symptoms are disproportionate to the objective evidence and to his activities of daily living." (R. 24.) He also stated that "[t]he exertional and postural limitations proposed by the State agency are consistent with the claimant's degree of degenerative joint disease of the lumbar spine and hips." (*Id.*) It appears from the foregoing that the ALJ made his own assessment of the objective medical evidence and decided that Dr. Weaver's opinion was most consistent with that evidence. However, the ALJ was not qualified to make that assessment since he is not a doctor. As discussed previously, he is not qualified to read the results of an X-ray or other objective evidence to determine the level of restrictions the evidence is most consistent with.

The Commissioner argues, however, that the ALJ's findings were based on Dr. Weaver's assessment. The ALJ did state that "The state agency doctor had the opportunity to review Dr. Campbell's report but determined a medium [RFC] was more appropriate considering the objective findings." (R. 24.) However, even if I assume that the ALJ relied on Dr. Weaver's opinion and did not attempt to interpret the medical evidence himself, I find that the validity of the ALJ's reliance on Dr. Weaver's opinion is highly questionable as discussed herein.

The ALJ also failed to consider that Dr. Weaver's opinion was issued in 2004. Mr. Naranjo subsequently had more than two years of additional treatment. The ALJ erred in not taking this into account in assessing the weight to give his opinion. Further, the ALJ failed to note that Dr .Weaver appeared to be under a similar misconception to that shared by the ALJ; namely, that the x-ray results showed only mild degenerative joint disease. (R. 244.) He did not reference the x-ray's finding of "moderately severe" osteoarthritic changes in Mr. Naranjo's hips. Finally, the ALJ's discussion does not demonstrate that he weighed Dr. Weaver's opinion using the factors in 20 C.F.R. §404.1527(d).

C.      Whether A Remand Is Appropriate and the Scope of the Remand

I find from the foregoing that the ALJ did not properly weigh the medical evidence or expressly state the weight he was giving to the medical providers. I also find that many of his reasons for rejecting the opinions of Drs. Lopez and Campbell were not valid. Further, I find the ALJ did not properly weigh the opinions of Dr. Weaver and that his reasons for giving "substantial" weight to Dr. Weaver's opinions are not supported by

substantial evidence.  While Plaintiff requests that the case be reversed outright and

that benefits be awarded, I find that a remand is appropriate to address these issues.

*See Gunter v. Comm'r of Soc. Security*, Slip Copy, 2010 WL 145273, at * 1 (10th Cir.

Jan. 15, 2010) ("We do not hesitate to remand when the Commissioner has not given

good reasons for the weight given to a treating physician's opinion").

Since the medical evidence was not properly weighed, I find that the RFC must

be reassessed, as the findings of Drs. Lopez and Campbell reasonably call into

question the RFC finding made by the ALJ.  This may well impact the ALJ's findings at

steps four and five.  In assessing Mr. Naranjo's RFC on remand, the ALJ must take into

account that a claimant must be able to do sustained activities in a work setting on a

regular and continuing basis, meaning eight hours a day, five days a week, or an

equivalent work schedule.  *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007).  "'A

finding that a claimant is able to engage in substantial gainful activity requires more than

a simple determination that the claimant can find employment and that he can physically

perform certain jobs; it also requires a determination that the claimant can *hold*

whatever job he finds for a significant period of time.'"  *Washington*, 37 F.3d at 1442

(emphasis in original) (quotation omitted).

I also find that Mr. Naranjo's credibility and pain must be reassessed on remand.

First, my discussion of the medical evidence above revealed some errors of the ALJ in

rejecting complaints and findings of pain.  I also find other errors in the ALJ's credibility

and pain analysis that must be addressed on remand.

First, the ALJ appeared to discount all the medical findings in the record which supported Mr. Naranjo's complaints of chronic pain. This was legal error. *See Romero v. Astrue*, 242 Fed. Appx. 536 (10th Cir. 2007) (doctor's conclusions concerning Ms. Romero's pain and limitation "find support in the treatment records and therefore could not be cursorily dismissed for the reason the ALJ gave: lack of medical evidence. The record is replete with evidence that Ms. Romero experiences difficulties with both standing and walking. . . ").

Second, "the ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain." *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993). That is precisely what the ALJ appeared to do in this case. *(See* R. 25—even though Mr. Naranjo does not engage in certain referenced daily activities every day, "the fact that [Mr. Naranjo] engages in [those activities] at all is enough to dispel his testimony that he has sharp pain in his whole body, day and night"). Similarly, "sporadic diversions do not establish that a person is capable of engaging in substantial gainful activity". *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984)

Third, the ALJ discounted Mr. Naranjo's pain because of non-compliance with medical treatment through, *inter alia*, the failure to buy diabetic supplies or medication prescribed by the doctor. (R. 26.) However, the record demonstrates that Mr. Naranjo complained of not being able to afford these supplies and medication. A claimant's inability to afford treatment may constitute justifiable cause for failing to comply with prescribed treatment. *Lee*, 2004 WL 2810224, at *4. The ALJ erred in failing to

consider this. The ALJ also found that Mr. Naranjo had the severe impairment of obesity but then chastised him for not losing weight. This certainly is questionable.

Fourth, the ALJ continued his practice of making improper lay opinions about the medical evidence in assessing credibility. For example, he discounted Mr. Naranjo's complaints of falling because there were not hospital records regarding such falls and because he thought it was questionable that Dr. Lopez did not refer Mr. Naranjo to a neurologist or ear specialist. (R. 25.) However, medical records from Dr. Lopez lend credibility to these complaints. Further, the ALJ discounted Dr. Lopez's findings of diabetic complications related to Mr. Naranjo's neuropathy and lack of sensation in his feet based on the fact that the sensation went from 10/10 to 2/10 and back to 10/10 (*id.*), again an improper medical judgment.

IV.    CONCLUSION

Based upon the errors described above, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further factfinding pursuant to sentence four in 42 U.S.C. § 405(g).

Dated March 30, 2010

                                    BY THE COURT:

                                    s/ Wiley Y. Daniel
                                    Wiley Y. Daniel
                                    Chief United States District Judge